# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.K., K.K, B.H., and K.H.**

**No. 17-0580** (Grant County 16-JA-12, 16-JA-13, 16-JA-14, & 16-JA-19)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother O.H., by counsel Aaron P. Yoho, appeals the Circuit Court of Grant County's April 27, 2017, order terminating her parental rights to J.K., K.K., B.H., and K.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative and denying post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2016, the DHHR filed an abuse and neglect petition that alleged petitioner used inappropriate corporal punishment on the children, in addition to emotional, psychological, and verbal abuse. The petition also alleged that petitioner failed to provide the children with necessary food, shelter, and supervision. According to the petition, petitioner suffered from bipolar disorder, anxiety, depression, and ADHD, but refused medication for any of the conditions. Finally, the petition alleged that J.K. tested positive for THC at birth.

In May of 2016, the circuit court held an adjudicatory hearing, during which the circuit court adjudicated petitioner of abusing and neglecting the children. The circuit court also granted petitioner a post-adjudicatory improvement period. At a hearing in June of 2016, petitioner's counsel informed the circuit court that petitioner moved to Baltimore, Maryland, and requested

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

that the DHHR provide her with transportation to and from visits with her children. At a hearing later that month, the circuit court approved the family case plan as agreed to by all parties.

In September of 2016, visits between three-year-old B.H. and the parents were terminated because of the child's diagnosis of post-traumatic stress disorder and his violent outbursts and acts of self-harm. In October of 2016, petitioner gave birth to K.H. That same month, the DHHR filed an amended petition to include that child in the proceedings. The circuit court also held a preliminary hearing that month, during which petitioner indicated that she moved back to West Virginia. The circuit court found that her compliance with the improvement period was sporadic, but it nonetheless extended the improvement period in November of 2016 after adjudicating petitioner in regard to the amended petition.

In January of 2017, the circuit court granted petitioner a new improvement period so that the parents could work toward reunification together. The following month, the circuit court ordered K.H.'s return to the parents' custody, despite concerns over the other children's behavior related to visits with the parents. In March of 2017, the circuit court held a hearing and heard evidence concerning the visits between the children and the parents. This included evidence that supported terminating visits between B.H. and the parents due to the severe negative effects on the child.

In April of 2017, the DHHR filed a motion to revoke petitioner's improvement period. According to the motion, petitioner stopped regularly participating in services and was travelling out of the state with K.H. without advising the DHHR. The motion further alleged that when the DHHR attempted to address the issues with petitioner, she became angry and aggressive and refused to assure the DHHR of the child's safety. The motion further alleged that petitioner left K.H. in the care of an individual who lost custody of her own children and was not appropriate to provide care for K.H. Moreover, petitioner and the father engaged in a domestic violence incident in April of 2017 that resulted in a domestic violence protective order and criminal charges. As such, the DHHR again removed K.H. from petitioner's care by emergency order. The circuit court then held a hearing on this motion and revoked petitioner's improvement period.

Later that month, the circuit court held a dispositional hearing, during which it found that petitioner failed to comply with the terms and conditions of her improvement period. The circuit court also found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future before terminating her parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]The parents' parental rights to the children were terminated below. According to the DHHR, the children are placed in a foster home with a permanency plan of adoption therein.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative. According to petitioner, she corrected the conditions of abuse and neglect through her successful completion of the terms of her post-adjudicatory improvement period. We find, however, that petitioner did not successfully remedy the conditions of abuse and neglect during her improvement period and that, to the contrary, the conditions persisted throughout the pendency of the proceedings. While it is true that petitioner demonstrated compliance with the terms and conditions of her improvement period sufficient to have child K.H. returned to her care, petitioner ignores the fact that the DHHR later had to remove the child from her custody again due to emergency circumstances.

In its dispositional order, the circuit court found that petitioner was "non-compliant with the terms of her [post-]adjudicatory improvement period" because she failed to fully address her mental health issues, including her refusal to take her prescribed psychotropic medications, which resulted in severe anger issues. The circuit court also found that petitioner failed to attend parenting classes and was "wholly uncooperative" with the DHHR's removal of K.H. "by failing to disclose his whereabouts." Moreover, during the proceedings petitioner "selected an inappropriate babysitter she met on Facebook . . . after assuring the [DHHR] that she had a[n] . . . approved sitter." And finally, petitioner engaged in domestic violence after regaining custody of K.H. This evidence supports the circuit court's termination of petitioner's parental rights without the imposition of a less-restrictive dispositional alternative.

According to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) goes on to establish that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial

diminution of conditions which threatened the health, welfare or life of the child[.]

As set forth above, substantial evidence established that petitioner failed to follow through with the reasonable family case plan. Based upon her refusal to properly treat her mental health issues, participate in parenting classes designed to remedy the conditions of abuse and neglect, and engagement in domestic violence, among other issues, we find no error in the circuit court's finding in this regard. Moreover, the circuit court made findings addressing how termination of petitioner's parental rights served the children's best interests, including the fact that they required continuity in care and caretakers, along with the amount of time required to integrate them into a stable and permanent home. As such, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare.

We have also held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604]. . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because the record is clear that the circuit court had ample evidence upon which to base its findings, we find no error in the termination of petitioners' parental rights to the children.

Finally, we find no error in the circuit court's denial of post-termination visitation. On appeal, petitioner asserts that there were no issues with the visits between her and the children, although she acknowledges that J.K. did express some "troubling behaviors" after visitation. Petitioner also alleges that the circuit court erroneously attributed child B.H.'s post-traumatic stress disorder to her actions. We do not agree. In its dispositional order, the circuit court specifically found that "the children have, subsequent to . . . visits [with petitioner], manifested psychological distress by stuttering, pulling out hair to the point of baldness, biting, kicking, and tantrums[.]" The circuit court went on to point out B.H.'s diagnosis.

In discussing post-termination visitation, we have held as follows:

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such

visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Even ignoring the circuit court's finding regarding B.H.'s diagnosis, it is clear that the evidence overwhelmingly established that continued visitation with petitioner would not be in the children's best interests. As set forth above, the children suffered severe negative effects following visits. As such, we find that the circuit court's denial of post-termination visitation was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 27, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker